UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,

v.

DON KRAMER and OAKLAND
COUNTRY TREASURER,

                     Defendants.

_____/

Case No. 24-10822

Nancy G. Edmunds
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF No. 26)

## I.     PROCEDURAL HISTORY

On March 29, 2024, Plaintiff—the United States of America—filed this action against Defendants Doron Kramer, a/k/a Donald Kramer, a/k/a Don Kramer, and the Oakland County Treasurer.[1]  All pretrial matters were referred to the undersigned.  (ECF No. 11).

On May 10, 2024, Kramer filed a document which the Court construed as an Answer to Plaintiff's complaint.  (ECF No. 7; ECF No. 15, PageID.182–83). Because Kramer's Answer contained frivolous and immaterial information

---

[1] Pursuant to 26 U.S.C. § 7403(b), Plaintiff joined Oakland County to this action because it has or may claim during this action liens on the property at issue arising from unpaid property taxes.  (ECF No. 1, PageID.3, ¶ 5; ECF No. 34, PageID.482, ¶ 2).

consistent with "sovereign citizen" rhetoric and did not adhere to the strictures of Federal Rule of Civil Procedure 8(b)(1), the Court granted Plaintiff's motion to strike Kramer's pleading. (ECF No. 15, PageID.181–83). Even so, the Court afforded Kramer an additional twenty-one days to file a proper answer and explained how Kramer should title and format his answer; the Court even instructed Kramer to "respond, clearly, to all the allegations in the corresponding numbered paragraph in the . . . complaint, by admitting, denying, or denying for lack of sufficient knowledge each of the allegations. (*Id.* at PageID.183) (internal quotations omitted). The Court explicitly advised Kramer that his answer "should not contain any frivolous or extra information." (*Id.*).

When Kramer did not file a new answer within the time allotted, Plaintiff requested an entry of default against Kramer from the Clerk's Office on November 21, 2024. (ECF No. 16). The clerk of the court did so on the same day. (ECF No. 17). Kramer has, however, submitted filings that repeat the same sort of "frivolous" and "immaterial information" he did with his original improper answer. (ECF Nos. 19, 24, 28, 29). None of these filings adhered to the Court's instructions on how Plaintiff should draft his answer to Plaintiff's complaint. On March 14, 2025, the Court terminated one of these filings because, among other things, Kramer failed to (1) move to set aside the entry of default, and (2) move for an extension of time to file a proper answer. (ECF No. 25). Ultimately, the Court

instructed Plaintiff to file a motion for default judgment by April 4, 2025, if it intended to do so.  (*Id.* at PageID.288).

Consistent with the Court's instruction, Plaintiff timely filed its motion for default judgment against Kramer on April 2, 2024.  (ECF No. 26).  Kramer subsequently submitted one filing that largely reiterates frivolous arguments made elsewhere and another filing in opposition to Plaintiff's motion; that said, Kramer's response repeats many of his other frivolous positions.  (ECF Nos. 28, 29).  Plaintiff filed its reply on May 16, 2025.  (ECF No. 29).  The Court also ordered supplemental briefing which, after granting an extension of time, Plaintiff timely filed.  (ECF Nos. 31, 32, 33).  Kramer, in response, submitted a litany of filings. (ECF Nos. 35, 36, 37, 38, 39, 40, 41, 42).  Since the first of these filings is docketed as an "Amended Response" to the motion for default judgment, the undersigned construes that filing as Kramer's response to Plaintiff's supplemental brief.  (ECF No. 35).

For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Default Judgment as to Doron Kramer* (ECF No. 26) be **GRANTED**.

## II.     BACKGROUND

This case is about money Kramer purportedly owes Plaintiff, and Plaintiff's attempts to collect those funds.  The events leading up to this action began in April 2003 when Kramer and his brothers, Richard and Harold, opened a joint Swiss

bank account ending in 0118.  (ECF No. 26, PageID.293).  Defendant Kramer subsequently opened his own account ending in 0996.  (*Id.* at PageID.294).  Because of these foreign accounts, Kramer had an obligation to file a "Report of Foreign Bank and Financial Accounts" ("FBAR") pursuant to federal law.  (*Id.*).  When he failed to do so within the time allotted for 2006, 2007, and 2008, the IRS assessed civil penalties.  (*Id.*).

Plaintiff subsequently filed a civil action in this Court to reduce to judgment Kramer's FBAR penalties.  (*Id.* at PageID.294–95 (referencing *United States v. Donald Kramer*, No. 2:19-CV-10818-BAF-APP (E.D. Mich.)).  The Court ultimately entered a default judgment against Kramer for a total of $786,223.64.  (*Id.*); *see also Kramer*, No. 2:19-CV-10818-BAF-APP, ECF Nos. 11, 12 (E.D. Mich. Mar. 25, 2020).  Plaintiff filed a certified abstract of this judgment in Oakland County.  (ECF No. 26, PageID.295; ECF No. 33-3, PageID.446).  Though Plaintiff has received notice and a demand for payment, payment remains outstanding.  (ECF No. 26, PageID.295).

Defendant Kramer's brother Richard also received FBAR penalties for his own Swiss Bank Accounts.  (*Id.*).  Richard passed away in February 2017 and was survived by his brothers Doron and Harold.  (*Id.*).  When Plaintiff filed a civil action in the Southern District of Florida, it named Defendant Kramer as the

potential heir and/or personal representative of Richard's estate.[2]  (*Id.*).  The court

entered judgment against Kramer in the amount of $1,010,322.68.  (*Id.*); *see also*

*United States v. Doron Kramer*, 1:18-CV-24492, Dkt. No. 51 (S.D. Fla. Oct. 7,

2019).  After Plaintiff enforced federal tax liens against real property Richard

owned and applied the proceeds ($430,105.83) to the amount owed, Kramer still

owed more than $500,000.  (ECF No. 26, PageID.296 n.1).  Plaintiff also filed a

certified abstract of this judgment in Oakland County.  (*Id.* at PageID.296; ECF

No. 33-3, PageID.445).

Separately, Defendant Kramer was allegedly delinquent on his own taxes,

incurring various penalties for the tax years 2004–2008 and 2010.  (ECF No. 26,

PageID.296–98).  Though Kramer petitioned the U.S. Tax Court in July 2017 and

challenged the IRS's tax assessments, the Tax Court ultimately sustained the

proposed deficiencies and penalties.  (*Id.* at PageID.297; ECF No. 1-1 (regarding

the Tax Court's Order and Decision)).  According to the sworn declaration from

Gina Bacon, a Revenue Officer Advisor with the IRS, and the included supporting

documents, the total unpaid balance of Kramer's tax liabilities and penalties as of

March 28, 2025, was $507,548.26.  (ECF No. 26-2, PageID.315–23).  Despite

---

[2] Defendant Kramer's other brother Harold disclaimed any interest in Richard's estate.
(ECF No. 26, PageID.295).

proper notice and demand, Kramer allegedly has not paid off these tax liabilities and penalties.  (ECF No. 1, PageID.12, ¶ 56).

Also at issue here is Kramer's transfer of property located at 7093 Autumn Hill Drive, West Bloomfield, Michigan (the "Subject Property").  Kramer has allegedly resided at this address with his spouse since September 2007.  (ECF No. 26, PageID.298).  After Kramer received unfavorable judgments regarding the FBAR penalties but two months before the Tax Court ultimately rendered its decision in February 2021, Kramer sold the Subject Property to the Christian Kramer Trust ("the Trust") for an alleged consideration of $10.00 on December 16, 2020.  (*Id.*; ECF No. 33-1, PageID.440; ECF No. 38, PageID.535).  The Quitclaim Deed that memorializes this transfer suggests the Trust came into being on October 1, 2020.  (ECF No. 33-1, PageID.440).  Kramer is purportedly the trustee for the Trust.  (ECF No. 26, PageID.298).  Since the sale, Kramer and his spouse allegedly continue to reside and enjoy the benefits of the Subject Property.  (*Id.* at PageID.298–99).  Plaintiff alleged in its complaint that this transfer was a fraudulent attempt to distribute Kramer's sole domestic asset and thwart Plaintiff's collection efforts.  (ECF No. 1, PageID.8–9, ¶¶ 41–43, 45).

Plaintiff sued to reduce the federal tax assessments—as well as any statutory additions or interest that has accrued since Plaintiff filed its case—against Kramer to judgment under 26 U.S.C. § 7402(a).  (*Id.* at PageID.10–12, ¶¶ 10–12).  Plaintiff

6

also raised claims for the enforcement of its federal tax and judgment liens on the Subject Property pursuant to 26 U.S.C. § 7403 and 28 U.S.C. § 3201(a) of the Federal Debt Collection Procedures Act ("FDCPA"), respectively (Counts IV and V).  (*Id.* at PageID.16–18, ¶¶ 67–78).  To do so, Plaintiff lodged claims under 28 U.S.C. § 3304(b) of the FDCPA and the Michigan Uniform Voidable Transfers Act ("MUVTA") to set aside the allegedly fraudulent transfer of the Subject Property (Counts II and III, respectively).  (*Id.* at PageID.13–15, ¶¶ 58–66).  Plaintiff consequently asked the Court to appoint a receiver to sell the Subject Property and to distribute Kramer's share of the proceeds to Plaintiff to apply to the judgments entered against Kramer.[3]  (*Id.* at PageID.19).

## III.   ANALYSIS AND RECOMMENDATION

Before the Court is Plaintiff's motion for default judgment against Kramer. To prevail on this motion, the undersigned "must ensure that (1) it has both subject-matter jurisdiction over the claim and personal jurisdiction over the defendant, (2) the defendant was properly served, (3) the defendant has failed to appear and to defend, and (4) the plaintiff is entitled to the relief sought."  *C.A.T. Glob. Inc. v. OTT Transp. Servs.*, 737 F. Supp. 3d 620, 625 (E.D. Mich. 2024)

---

[3] Plaintiff intends on using the proceeds to (1) pay the costs of the sale, (2) pay the Oakland County Treasurer any real estate taxes due and owed on the Subject Property, and (3) pay for the judgments against Kramer.  (ECF No. 1, PageID.16, ¶ 70, PageID.17, ¶ 78).  Plaintiff and Oakland County jointly stipulated to such an arrangement on September 10, 2025.  (ECF No. 34).

(citation omitted).  The following analysis will address each of these requirements in kind after first addressing a preliminary matter that has affected many of Kramer's filings: his sovereign citizen arguments.

### A.    Sovereign Citizen Arguments

Kramer's filings raise an assortment of arguments that are consistent with the "meritless rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed Moorish-Americans." *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017).  Consider just this brief sample.  Kramer has informed the Court that his "[s]overeignty is between me and [his] god" and has "request[ed] that POSITIVE LAW be used" exclusively.  (ECF No. 24, PageID.252–56).  Kramer has indicated that "Doron Kramer" is a non-party but that he is also the "authorized official of: DORON KRAMER, a/k/a, DONALD KRAMER, a/k/a DON KRAMER."  (ECF No. 10, PageID.130–31).  Indeed, Defendant Doron Kramer apparently has "full extensive Power of Attorney over the affairs of DORON KRAMER."  (ECF No. 29, PageID.377).  Kramer has also asserted that he is a "stateless person," so he is not subject to the jurisdiction of any federal court.[4]  (*Id.* at PageID.378).

---

[4] Kramer also submitted "hundreds of pages of tax-protester rhetoric" to the U.S. Tax Court.  (ECF No. 1-1, PageID.31).  Arguments in that vein did not help Kramer then, and they do not help him now.  It is also worth noting that the Southern District of Florida also rejected Kramer's sovereign citizen arguments in a separate action in which the United States sought to enforce liens on property Richard Kramer owned.  *See United States v. Cam*, Case No. 1:22-cv-20885-KMM, Dkt. No. 31 (S.D. Fla. Nov. 7, 2022).

"Courts have repeatedly rejected, as frivolous, arguments based on the theory of sovereign citizenship." *Powell v. Michigan*, No. 22-10816, 2023 WL 2154954, at *2 (E.D. Mich. Jan. 24, 2023), *report and recommendation adopted*, 2023 WL 2145490 (E.D. Mich. Feb. 21, 2023) (quoting *In re Mooreese El*, No. 3:21-MC-3-BJB, 2021 WL 4594666, at *1 (W.D. Ky. Oct. 6, 2021)). The Sixth Circuit has observed that "no federal court has ever found validity in the myriad of assertions that may be classified under the heading 'sovereign citizen[.]'" *United States v. Gooch*, 595 F. App'x 524, 527 n.1 (6th Cir. 2014). For instance, this Court and others have regularly deemed frivolous and meritless the argument that one is not subject to the jurisdiction of the federal courts because he is purportedly "stateless." *See United States v. Chafee*, No. 18-11559, 2019 WL 8403506, at *6 (E.D. Mich. Nov. 8, 2019) (citing *Payne v. Kilda*, No. 15-CV-14127, 2016 WL 491847, at *3–4 (E.D. Mich. Jan. 6, 2016)), *report and recommendation adopted*, 2020 WL 1316643 (E.D. Mich. Mar. 20, 2020); *Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (observing that "an individual's belief that her status as a sovereign citizen puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotations and citation omitted); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (same).

9

Rather than waste time, effort, and judicial resources to unravel and debunk each of Kramer's sovereign citizen arguments, the undersigned will address them only when it is relevant to do so and only as needed.

### B.      Motion for Default Judgment

#### 1.      Jurisdiction

As this Court has pointed out elsewhere, "[o]nce default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, *including jurisdictional averments*." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Matter of Visioneering Constr.*, 661 F.2d 119, 124 (9th Cir. 1981)) (emphasis added).

#### a.      *Subject-Matter Jurisdiction*

The Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's federal causes of action.  Plaintiff alleged, in part, that this Court has jurisdiction under 28 U.S.C. § 1345, 26 U.S.C. § 7402(a), and the FDCPA, 28 U.S.C. §§ 3001 *et seq.*  (ECF No. 1, PageID.2, ¶ 1).  "Section § 1345 confers federal jurisdiction over 'all civil actions, suits or proceedings commenced by the United States.'"  *United States v. Miller*, Case No. 07-11700, 2008 U.S. Dist. LEXIS 8919, at *3 (E.D. Mich. Feb. 7, 2008).  And 26 U.S.C. §§ 7402 and 7403 "outline a federal district court's authority in these types of cases [e.g., cases brought by the federal government to collect unpaid taxes]."  *Id.*  Thus, the Court

10

has jurisdiction over Counts I and IV.  The FDCPA itself provides for the Court's jurisdiction over Counts II and V.  *See United States v. Bayley*, No. 24-2901, 2025 WL 1905114, at *1 (9th Cir. July 10, 2025) (regarding 28 U.S.C. § 3304); *Dodenhoff v. Cache Creek Foods, LLC*, No. 2:15-CV-0107-MCE-KJN, 2015 WL 1638002 (E.D. Cal. Apr. 13, 2015) (referencing the "procedures" under 28 U.S.C. § 3201(a) "by which the United States may recover a judgment on a debt"), *report and recommendation adopted*, 2015 WL 3652280 (E.D. Cal. May 15, 2015).

The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Count III, Plaintiff's state-law claim under the Michigan Uniform Voidable Transfers Act.

> b.      *Personal Jurisdiction*

"General [personal] jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there."  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted)).  Ordinarily, federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  *See also Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 881 n.2 (E.D. Mich. 2025) (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)).  Under Michigan's long-

11

arm statute applicable to individuals, a court has general personal jurisdiction over a defendant when that defendant is (1) present in Michigan when process is served; (2) domiciled in Michigan when process is served; or (3) otherwise consents to the court's exercise of personal jurisdiction.  Mich. Comp. Laws § 600.701(1)–(3).

Defendant Kramer was personally served at the Subject Property in Michigan on April 24, 2024.  (ECF No. 6, PageID.64).  Accordingly, Kramer "was within the jurisdiction of Michigan [at the time of service], and therefore is within this Court's jurisdiction as well."  *Chaffee*, 2019 WL 8403506, at *7 (citation omitted); *see also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . .").

Kramer's "stateless person" position does not alter the undersigned's conclusion here.  For one thing, that argument is frivolous and a meritless sovereign citizen argument for the reasons mentioned above.  For another, the undersigned need not make a determination regarding Kramer's domicile since Kramer received service of process in Michigan thereby authorizing this Court's

12

exercise of personal jurisdiction over him pursuant to MCL § 600.701 and Rule 4(k)(1)(A).[5]  *See Chaffee*, 2019 WL 8403506, at \*7.

### 2.      Service of Process

Under Rule 4(e)(2)(A), Plaintiff could validly serve Kramer by "delivering a copy of the summons and of the complaint to [him] personally."  As mentioned, above, Kramer received personal service on April 24, 2024.  (ECF No. 6, PageID.64).  Nor did Kramer raise service of process as an issue in his responses to Plaintiff's motion for default judgment.  Service of process was therefore proper.

### 3. Entry of Default

An entry of default is proper when a party "has failed to plead or otherwise to defend" itself in an action.  Fed. R. Civ. P. 55(a).  As described above, the Court construed Kramer's filing at ECF No. 7 as his answer to Plaintiff's complaint but struck that answer for failing to adhere to the strictures of Rule 8; Kramer then had an additional twenty-one days to file a proper answer in accordance with the Court's instructions.  (ECF No. 15).  Kramer failed to do so.  Instead, he has submitted various filings that reiterate meritless sovereign citizen arguments and do not comply with the Court's prior guidance regarding proper pleadings.

---

[5] Even if Kramer were a non-resident, the Supreme Court has recognized as one of "the most firmly established principles of personal jurisdiction in American tradition" the ability of "the courts of a State to have jurisdiction over nonresidents who are physically present in the State." *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 610 (1990).

13

Even Kramer's latest attempt did not comply with the Court's previous Order. Included with his response to Plaintiff's supplemental brief is an "Introduction" section that groups together allegations from the complaint, denies or admits to aspects of those allegations, and includes additional frivolous language that does not belong in a properly pleaded Answer. (ECF No. 35, PageID.489–94). This filing also included a memorandum of law, a request for sanctions, and other miscellaneous material. Put simply, this is far from what the Court ordered Kramer to include in his pleadings. Accordingly, a proper answer from Kramer remains outstanding as of this writing.[6]

Kramer has also marshaled no legitimate arguments indicating an intent to defend himself on the merits of the claims raised against him. Though Kramer certainly opposes any adverse action Plaintiff may take against him, he has not raised cogent arguments on the merits. Consider some of Kramer's contentions. In his view, "[t]he nature of this case and cause appears to be an accounting and records." (ECF No. 28, PageID.334). In that vein, Kramer insists that an "accounting" is "crucial" in "estate or probate cases involving tax disputes." (*Id.* at PageID.340). And as Kramer is a "successor Trustee"—to what trust, he does not

---

[6] Kramer has repeatedly insisted that he needs pre-answer discovery because he "do[es] not have enough information to even enter a plea." (ECF No. 19, PageID.211; ECF No. 24, PageID.259; ECF No. 28, PageID.346; ECF No. 29, PageID.388). Yet the Court informed Kramer that he could file a proper pleading in which he denied the allegations against him "for lack of sufficient knowledge." (ECF No. 15, PageID.183).

14

say—and the records from the previous trustee—who is nameless—are unclear, pre-answer discovery is required for Kramer to fulfill his fiduciary obligations to the unnamed trust. (*Id.* at PageID.341–43). Kramer repeated this argument in his response to Plaintiff's motion as well. (ECF No. 29, PageID.379 (describing this case as involving the "debt collection of taxes owned on the Estate or Trust"), PageID.383–87).

Much of this, if not all, is nonsensical. Kramer says an "accounting" is needed for him to fulfill his fiduciary obligations as a trustee to some unnamed trust. The only relevant trust at issue is the Christian Kramer Trust which purchased the Subject Property from Kramer himself. And since Kramer was both the seller and allegedly the trustee in that transaction, it beggars belief that he does not have the relevant documents from that purportedly fraudulent transfer. Nor does it make sense that the IRS has documents from that transfer that Kramer does not. If Kramer suggests with these arguments that an accounting is needed regarding his brother Richard's estate, he is mistaken. The Southern District of Florida has already rendered its judgment regarding Richard's FBAR penalties. And Plaintiff has already enforced its liens on real property that Richard owned and applied those proceeds to the related judgment. An accounting is not needed to determine that Kramer owes the rest of that judgment to Plaintiff. An accounting is also not required to determine the amount of taxes or FBAR penalties

Kramer himself owes to Plaintiff.  The IRS assessed the former and the Tax Court ruled against Kramer when he challenged those assessments.  This Court in a separate case entered a default judgment regarding the latter—a judgment which Plaintiff now seeks to enforce.

All that said, Kramer did argue in his response to Plaintiff's motion that the entry of default should be set aside.  (*Id.* at PageID.382).  Under Rule 55(c), the Court may set aside an entry of default for good cause.  "When evaluating whether there is good cause sufficient to set aside an entry of default, courts consider whether '(1) whether the default was willful, (2) whether the set aside would prejudice the plaintiff, and (3) whether the defendant has meritorious defenses.'" *Beamer v. Fadel-II Foods*, No. 10-CV-10104, 2012 WL 1068708, at *3 (E.D. Mich. Mar. 29, 2012) (quoting *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011)).  Since Kramer is the party who seeks to set aside the entry of default, it is his burden to show how these factors favor him.  *Id.* (citation omitted).

Kramer did not cite these factors nor did he address whether the default was willful or whether setting aside the entry of default would be prejudicial to Plaintiff.  Accordingly, Kramer did not satisfy his burden on the first two factors. Kramer has argued that the entry of default should be set aside because his

16

defenses are meritorious.  (ECF No. 29, PageID.382).  But Kramer's arguments are not compelling.

*First.*  Kramer asserts that Plaintiff has not produced evidence in discovery in support of its claims and that Plaintiff cannot rely on the statements of counsel in a brief to prevail on their motion.  (ECF No. 29, PageID.380–81 (citing *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964)).  For starters, Kramer's insistence on pre-answer discovery lacks support for the reasons discussed earlier.  Also, plaintiffs ordinarily are not required to prove their case at the pleadings stage— discovery is designed to adduce that evidence.  Because Kramer has not filed a proper response to Plaintiff's complaint, this case has not proceeded to the discovery phase.

Even so, Plaintiff does not rely on counsel's statements in its filings; instead, it relies on the well-pleaded allegations in its complaint which are admitted as a consequence of the default entered against Kramer.  *See C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 625 (citing *Ford Motor Co.*, 441 F. Supp. 2d at 846).  Plaintiff has also provided calculations of the taxes and penalties Kramer owes and directed the Court to the judgments already entered against Kramer.  And the Court requested and received supplemental briefing that included the chain of title for the Subject Property as well as the abstracts of judgment filed with Oakland County.  (ECF No. 33).  The entry of default should not be set aside for lack of evidence.

*Second*.  Kramer contends that Plaintiff must have "concrete" evidence to prevail.  (ECF No. 29, PageID.381 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)).  But as Kramer himself recognizes, the concreteness relates to the injury-in-fact element of constitutional standing under Article III.  (*Id.*).  Article III standing, in turn, is a threshold requirement needed for one to bring their case in federal court.  *See Lujan*, 504 U.S. at 559–60 (explaining that those litigating in federal court must have standing under Article III to do so); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  It is unrelated to whether Plaintiff has sufficient evidence to prove its claims.

And in any event, Plaintiff has alleged—and Kramer has admitted by way of his default—concrete harms.  An injury is concrete if it is "real and not abstract." *Spokeo, Inc.*, 578 U.S. at 340.  Plaintiff has outstanding judgments against Kramer, Kramer has unsuccessfully challenged the tax assessments and penalties levied against him, and Plaintiff cannot collect the owed funds if it cannot enforce the liens on the Subject Property.  These are concrete injuries.  Kramer has cited no authority to the contrary.

*Third*.  Kramer argues that the Court erroneously dismissed his case under Federal Rule of Civil Procedure 41(b) thereby depriving him of an opportunity to present his case and violating his procedural due process rights.  (ECF No. 29, PageID.381).  These contentions are equally unavailing.  The Court has not

18

dismissed this case pursuant to Rule 41(b), so Kramer has not been deprived of his procedural due process rights.  Kramer cites *United States v. Cruikshank*, 92 U.S. 542 (1875) in support of his position, but *Cruikshank*—a nineteenth century case that invalidated a criminal conviction because of an unconstitutionally vague indictment—has no bearing on the matters relevant to Plaintiff's motion for default judgment under Rule 55(b)(2).

*Fourth*.  Kramer asserts that his active filings indicate that this case "was" not ready for adjudication thereby rendering its "premature dismissal" inappropriate.  (ECF No. 29, PageID.382).  Again, Plaintiff's case has not been dismissed for any reason to this point.  To the extent that Kramer argues that the entry of default is improper because he is "actively participating in the litigation," the undersigned disagrees.  Despite clear instructions, (ECF Nos. 15, 25), Kramer has not timely filed a proper response to Plaintiff's complaint.  That Kramer has continued to file virtually the same document in lieu of an appropriate response to Plaintiff's complaint suggests that the result would just be more of the same if the Court set aside the entry of default and gave Kramer another bite at the apple. Kramer has not filed proper pleadings or otherwise asserted cogent arguments on the merits.  His frivolous filings to do not resemble active litigation designed to reach a merits-based decision.

19

*Fifth*.  Kramer's final position is that the dismissal of this case violated (or would violate) the right to a jury trial under the Seventh Amendment.  (ECF No. 29, PageID.382).  Once more, Kramer is mistaken, especially since this case has not been dismissed.  On this issue, Plaintiff is correct that Kramer has not properly demanded a jury trial under Rule 38(b).  (ECF No. 39, PageID.418).  To properly demand a jury trial, Kramer had to serve Plaintiff "with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served[.]"  Fed. R. Civ. P. 38(b)(1).  "The 'last pleading directed to the issue' is not the pleading that raises the issue; it is the pleading that contests the issue.  Normally, that pleading is an answer, or, with respect to a counterclaim, a reply."  *Allegra Network LLC v. Ruth*, No. 10-10941, 2010 WL 3190870, at *2 (E.D. Mich. Aug. 12, 2010) (citing 9 Wright & Miller's Federal Practice & Procedure § 2320 (3d ed. 2004)).  To reiterate, Kramer has not filed an answer in accordance with the Court's instructions.  Nor has he filed a Rule 39(b) motion.  So any such jury demand that may be in the record does not comport with Rule 38.

And in any event, Kramer "had no constitutional right to a jury trial following the . . . entry of default".  *Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *4 (6th Cir. June 10, 2008) (collecting Circuit Court cases); *Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-CV-02007-SHM-ATC, 2025

20

WL 1144678, at *3, n.1 (W.D. Tenn. Apr. 17, 2025) ("Caselaw dating back to the eighteenth century makes clear that the constitutional right to a jury trial does not survive the entry of default") (collecting cases) (citation modified).

In short, Kramer has not shown there is good cause to set aside the entry of default, and, if anything, only affirmed that the entry of default was appropriate.

### 4.      Plaintiff's Entitlement to Relief

The decision to grant a default judgment falls within the district court's sound discretion.  *C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 628 (citation omitted). Courts consider several factors to determine whether Plaintiff is entitled to relief, namely: "(1) possible prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits."  *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).  The undersigned will assess these factors in a somewhat different order.

#### a.      Merits of Plaintiff's Claims

***Count I***.  Plaintiff seeks to reduce to judgment the tax assessments levied against Kramer pursuant to 26 U.S.C. § 7402(a).  This claim is meritorious.  "It is well-established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against

21

a taxpayer in court." *United States v. Fior D'Italia*, 536 U.S. 238, 242 (2002); *see also Triplett v. Comm'r*, 53 F. App'x 339, 340 (6th Cir. 2002) ("The Commissioner's determination of a tax deficiency is presumptively correct, and the taxpayer has the burden of proving that the determination is erroneous or arbitrary."). Because of the entry of default against him, Kramer has failed to properly refute the accuracy of the tax assessments against him.[7] *United States v. Intelligent Perimeter Sys. Inc.*, No. 2:21-cv-1913, 2022 WL 3348653, at *3 (S.D. Ohio Aug. 12, 2022) (quoting *United States v. Reyes*, No. 15-CV-02459, 2016 WL 590247, at *8 (W.D. Tenn. Feb. 11, 2016)). Despite notice and Plaintiff's demand for payment, such payment remains outstanding. (ECF No. 1, PageID.12, ¶ 56). Kramer is therefore liable for the tax assessments, penalties, and any statutorily accrued interest. *See Intelligent Perimeter Sys., Inc.*, 2022 WL 3348653, at *3; *United States v. McLeod*, No. 2:23-CV-13093, 2024 WL 5316843, at *3 (E.D. Mich. Nov. 26, 2024), *report and recommendation adopted*, 2024 WL 5118475 (E.D. Mich. Dec. 16, 2024).

*Counts II–III*. Plaintiff claimed that Kramer transferred the Subject Property to the Trust with "actual intent to hinder, delay, or defraud" in violation

---

[7] Not to mention that the U.S. Tax Court's decision affirming Kramer's tax and penalty liabilities may be entitled to preclusive effect should Kramer attempt to relitigate those liabilities here. *See United States v. Gordon*, No. 21-6121, 2022 WL 3536271, at *2 (6th Cir. Aug. 18, 2022) (citing *Amos v. PPG Indus., Inc.*, 699 F.3d 448, 451 (6th Cir. 2012); *Golden v. Comm'r*, 548 F.3d 487, 495 (6th Cir. 2008)).

of the FDCPA, 28 U.S.C. § 3304(b)(1)(A),[8] and the MUVTA, Mich. Comp. Laws
§ 566.34(1)(a).[9]  (ECF No. 1, PageID.13–15).  Because the analysis of Plaintiff's
claims under the FDCPA and MUVTA are similar, the undersigned considers them
together.[10]  Plaintiff's claims under either statute have merit.

Both statutes address fraudulent transfers—the FDCPA covers debts to the
United States whereas the MUVTA covers debts to creditors more generally.  *See*
*Dillard v. Schlussel*, 865 N.W.2d 648, 663 (Mich. Ct. App. 2014).  That said, the
United States can bring a cause of action under either statute to set aside a
fraudulent transfer to collect on debts owed to it.  *See United States v. Upton*, 967
F. Supp. 57, 58 (D. Conn. 1997) (holding that the United States is authorized to
proceed with fraudulent conveyance claims under either state or federal law);

---

[8] Plaintiff also raised a fraudulent transfer claim under 28 U.S.C. § 3304(b)(1)(B).  Since
Plaintiff's claim under § 3304(b)(1)(A) has merit, the undersigned does not address this separate
claim under the FDCPA.

[9] In its motion, Plaintiff also refers to constructive fraud claims under the FDCPA and
MUVTA.  (ECF No. 26, PageID.304–05) (citing 28 U.S.C. § 3304(a)(1)–(2) and Mich. Comp.
Laws § 566.34(1)(b), respectively).  Since Plaintiff did not raise such claims in its complaint, the
undersigned will not assess them here.

[10] Since "[t]he FDCPA is very similar to the Uniform Fraudulent Transfer Act (UFTA),"
"courts have found interpretations of the UFTA . . . to inform the meaning of the FDCPA."
*United States v. Osborne*, 807 F. App'x 511, 520 n.7 (6th Cir. 2020).  The Uniform Voidable
Transfer Act—which Michigan has adopted (the MUVTA)—amended the UFTA; the
amendments did not substantively change the criteria for actual or constructive fraud under
Michigan law.  *See RPAD, LLC v. Dinoto*, No. 338280, 2018 WL 6252492, at *3–4 (Mich. Ct.
App. Nov. 29, 2018) (acknowledging the amendments to the UFTA, Michigan's adoption of the
amended statute, and suggesting that both statutes use the same criteria to define the "the two
species of fraudulent transfers" identified therein).

*United States v. Furnari*, 73 F. Supp. 3d 877 (E.D. Mich. 2014) (assessing fraudulent transfer claim under the FDCPA); *United States v. Porath*, 764 F. Supp. 2d 883, 899 (E.D. Mich. 2011), *aff'd,* 490 F. App'x 789 (6th Cir. 2012) ("[W]hen a taxpayer has fraudulently disposed of property prior to the establishment of a federal tax lien, the United States is entitled to rely upon the State's fraudulent conveyance laws where the property is located to determine whether the taxpayer has an interest in the property.").

When alleging an "actual intent" fraudulent transfer claim, courts often rely on the "badges of fraud" articulated in the statute to infer the transferor's fraudulent intent from the circumstances surrounding the transfer.  *See Sumpter v. United States*, 302 F. Supp. 2d 707, 723 (E.D. Mich. 2004) ("Actual intent to hinder, delay, or defraud may be difficult to prove by direct evidence . . . . Consequently, courts generally rely on traditional 'badges of fraud' to establish fraudulent intent."); *United States v. Key*, No. 2:17-CV-2790, 2020 WL 411043, at *2 (W.D. Tenn. Jan. 24, 2020) (same), *aff'd*, 837 F. App'x 348 (6th Cir. 2020). The badges of fraud enumerated under the FDCPA and MUVTA are virtually identical.  *See* 28 U.S.C. 3304(b)(2)(A)–(K); Mich. Comp. Laws § 566.34(2)(a)–(k).

As listed under the FDCPA, the badges of fraud a court may consider are:

(A)   the transfer or obligation was to an insider;

24

(B)     the debtor retained possession or control of the property
        transferred after the transfer;

(C)     the transfer or obligation was disclosed or concealed;

(D)     before the transfer was made or obligation was incurred, the
        debtor had been sued or threatened with suit;

(E)     the transfer was of substantially all the debtor's assets;

(F)     the debtor absconded;

(G)     the debtor removed or concealed assets;

(H)     the value of the consideration received by the debtor was
        reasonably equivalent to the value of the asset transferred or the
        amount of the obligation incurred;

(I)     the debtor was insolvent or became insolvent shortly after the
        transfer was made or the obligation was incurred;

(J)     the transfer occurred shortly before or shortly after a substantial
        debt was incurred; and

(K)     the debtor transferred the essential assets of the business to a
        lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2)(A)–(K).[11]  A concurrence of several of these factors makes

a strong case in support of fraudulent intent.  *See Sumpter*, 302 F. Supp. 2d at 723;

*Key*, 2020 WL 411043, at *2 ("The confluence of several badges can be conclusive

---

[11] This is a non-exclusive list.  *See Furnari*, 73 F. Supp. 3d at 886 ("Although
§ 3304(b)(2) permits the Court to consider other factors, it does not require the Court to do so.")
(citation modified).

evidence of fraudulent intent, absent significantly clear evidence of [the] debtor's legitimate supervening purpose.") (citation modified).

Plaintiff contends that "[t]he badges of fraud present in Kramer's case are overwhelming." (ECF No. 26, PageID.306–07). Considering the allegations in Plaintiff's complaint are deemed admitted as a result of Kramer's default, *see Ford Motor Co.*, 441 F. Supp. 2d at 846, the undersigned agrees.

The first two badges of fraud are easily established here. Plaintiff transferred the Subject Property to the Trust for which he is the trustee; thus, Plaintiff was on both sides of the transfer. (ECF No. 1, PageID.13, ¶ 60a). This is sufficient to establish that the transfer conveyed the Subject Property to an insider. *See United States v. Mendez*, No. 8:21-CV-2218-VMC-SPF, 2022 WL 1238655, at *3–4 (M.D. Fla. Feb. 7, 2022) ("First, the transfer was made to an insider— Defendant Miriam Mendez herself acting as Trustee of the MMM Family Trust."). By way of his default, Kramer also admits that he continues to retain possession or control of the Subject Property. On top of this, Kramer acknowledged that he "enjoy[s] beneficial use [of the Subject Property] under the terms of the private trust agreement." (ECF No. 38, PageID.536). This also establishes the second badge of fraud. *See Mendez*, 2022 WL 1238655, at *3–4 ("[Defendants] also continue to retain possession or control of the Subject Property, as they continue to live there even after it was transferred to the MMM Family Trust.").

26

Based on the allegations in the complaint and the evidence in the record, the fourth badge of fraud is also established. When Kramer transferred the Subject Property to the Trust in December 2020 (and even when the Trust was established in October 2020), two courts had deemed Kramer liable for more than $1 million in FBAR penalties. The transfer also took place just two months before the U.S. Tax Court ruled for the Government. So the United States had initiated litigation against Kramer to collect on the FBAR penalties and prevailed when Kramer challenged his own tax liabilities and penalties. Kramer therefore would also have been sufficiently aware of the "threat of suit" Plaintiff sought to collect on the debts owed to it after giving Kramer notice and a demand for payment.[12] *See United States v. Sherrill*, 626 F. Supp. 2d 1267, 1273 (M.D. Ga. 2009) (finding that the fourth badge of fraud established where the Government was actively investigating the defendant for violations of federal law that could result in civil or criminal proceedings).

So too are the fifth and ninth badges of fraud established by way of Kramer's default. In the complaint, Plaintiff claimed that "Kramer has no real estate in his name, no known publicly traded stock in his name, and no known

---

[12] Plaintiff also named Kramer as a defendant in a separate action when it sought to foreclose on its liens on Richard's property. That Kramer unsuccessfully moved to dismiss that action evinces his awareness that Plaintiff was taking affirmative steps to collect on the debts owed to it. *See United States v. Cam*, Case No. 1:22-cv-20885-KMM, Dkt. No. 31 (S.D. Fla. Nov. 7, 2022).

domestic bank accounts in his name." (ECF No. 1, PageID.9, ¶ 45). This allegation is now deemed admitted. Apart from whatever assets Kramer may still have overseas, the transfer of the Subject Property to the Trust constituted the entirety of his domestic assets thereby rendering him insolvent in the United States.

The seventh badge of fraud is also established as a result of transferring the Subject Property to the Trust. *See Mendez*, 2022 WL 1238655, at *3–4 ("The Mendezes also concealed their ownership of the Subject Property by placing it into the name of a trust.").

The eighth badge of fraud—whether Kramer received reasonably equivalent value for the transfer of the Subject Property—is also likely established here. "Reasonably equivalent value under § 3304(b) means 'the debtor has received value that is substantially comparable to the worth of the transferred property.'" *Key*, 2020 WL 411043, at *4 (quoting *United States v. Loftis*, 607 F.3d 173, 177 (5th Cir. 2010)). And in making this determination, the "critical time is when the transfer is made." *Osborne*, 807 F. App'x at 520–21.

Kramer transferred the Subject Property to the Trust for $10.00. (ECF No. 1, PageID.8, ¶ 39; ECF No. 33-1, PageID.440). Elsewhere, a transfer of real property for this amount of money established this badge of fraud. *See Mendez*, 2022 WL 1238655, at *3–4 (finding this badge of fraud established because "the Mendezes received only ten dollars in consideration for the transfer according to

28

the deed").  Although Plaintiff has only provided evidence that the current assessed value of the Subject Property is $221,300.00 as of September 2025, (ECF No. 33-2), it is unlikely the value of the Subject Property experienced a greater than 22,000% increase in value since Kramer transferred it to the Trust in December 2020.

Lastly, the tenth badge of fraud is also established.  As mentioned, Kramer transferred the Subject Property only two months before he lost his case before the U.S. Tax Court.  The transfer also occurred after Kramer had been deemed liable for the FBAR penalties at issue; notably, Plaintiff filed the abstract of judgment from the Florida case in March 2020 (nine months before the transfer) and the one from the Michigan case in April 2021 (less than four months after the transfer).  In other words, "the transfer occurred shortly before or after a substantial debt was incurred" and Plaintiff took steps to collect on that debt.

At bottom, eight of eleven badges of fraud are present here.  Consequently, there is a sufficient basis to infer that Kramer transferred the Subject Property to the Trust with "actual intent to hinder, delay, or defraud" Plaintiff.

Kramer contested only one of these badges of fraud, namely whether he received reasonably equivalent value when he transferred the Subject Property to the Trust.  In his response to Plaintiff's supplemental brief, Kramer claims that "[t]he transfer was for legitimate religious rights in exchange with no restrictions"

29

and "the consideration . . . of the property remained substantially consistent with customary trust administration." (ECF No. 35, PageID.490–91). To that end, he insists that "all statutory criteria for 'reasonable equivalent value' and bona fide trust creation are met under both federal and Michigan law." (*Id.* at PageID.491). As mentioned above, only "significantly clear evidence of [the] debtor's legitimate supervening purpose" can overcome the confluence of several badges of fraud. Kramer has failed to produce such evidence. Instead, he has referred only to an unexplained "legitimate religious right" and unexplained principles of "customary trust administration." Unlike Plaintiff, Kramer has made no comparison between the value of the Subject Property and the consideration he received when he transferred it to the Trust. This is hardly enough to overcome the confluence of the badges of fraud articulated above.

In one of his recent filings, Kramer also raised two broader arguments in response to Plaintiff's fraudulent transfer claims. Each are baseless.

First, Kramer contends that the Trust is an ecclesiastical trust, and Plaintiff cannot resolve "ecclesiastical property disputes . . . absent neutral, secular legal principles and competent evidence of fraud." (ECF No. 38, PageID.536) (citing 26 U.S.C. § 508(c)(1)(A)). Kramer relies on two Supreme Court cases in support of this position—*Watson v. Jones*, 80 U.S. 679 (1871) and *Jones v. Wolf*, 443 U.S. 595 (1979). (*Id.*). Yet these cases involved a civil court's ability to resolve

30

internal church disputes resulting from a schism in the church.  As this case does not involve such a schism and internal dispute, *Watson* and *Wolf* are inapt.

Second, Kramer contends that Plaintiff can only prevail on a fraudulent transfer claim with clear and convincing evidence.  (ECF No. 35, PageID.536).  As an initial matter, neither case Kramer cites in support of this position involve a fraudulent transfer claim.  Additionally, Plaintiff's burden of proof under the MUVTA is a preponderance of evidence.  *See* Mich. Comp. Laws § 566.34(3); *Caldwell Co. v. Yousif*, No. 23-CV-10976, 2025 WL 731512, at *2 (E.D. Mich. Mar. 7, 2025).[13]  Stated succinctly, Kramer's broader arguments on the fraudulent transfer claims are unavailing.[14]

---

[13] Under the MUVTA, "a creditor has the burden of proving the elements of the claim for relief by clear and convincing evidence" only when the allegedly fraudulent transfer involves a "qualified disposition."  Mich. Comp. Laws § 566.34(4).  The definition of a "qualified disposition" under the MUVTA is same as it is under Mich. Comp. Laws § 700.1042.  *See* Mich. Comp. Laws § 566.31(n).  Under the latter provision, a "qualified disposition" means, in part, that "[t]he subject property is owned by 1 or more trustees at least one of whom is a qualified trustee" following the transfer.  Mich. Comp. Laws § 700.1042(p)(i).  In turn, a "qualified trustee" refers to someone other than the transferor.  Mich. Comp. Laws § 700.1042(r).  As Kramer is the only trustee for the Trust and the transferor, he cannot be a qualified trustee; consequently, Plaintiff's MUVTA claim does not involve a qualified disposition, and Plaintiff need only prove its MUVTA claim by a preponderance of the evidence.

[14] As far as the undersigned can discern, there is only one case in this Circuit that even tentatively suggests that Plaintiff's burden of proof under the FDCPA is clear and convincing evidence.  *See United States v. Billheimer*, 197 F. Supp. 2d 1051, 1057 n.6 (S.D. Ohio 2002) ("In proving fraud in this case, the Government's burden of proof would appear to be the 'clear and convincing' standard.").  But the undersigned could not identify controlling authority imposing that burden under the FDCPA.  Even assuming this is the burden of proof, a FDCPA claim under § 3304(b)(1)(A) has been shown to have merit based on evidence similar to that presented here. *See Mendez*, 2022 WL 1238655, at *3–4.

*Count IV*.  Plaintiff's Count IV is also meritorious.  "When a person fails to pay outstanding taxes after a demand, the Internal Revenue Code empowers the [federal] Government to place a lien 'upon all property and rights to property, whether real or personal, belonging to such person.'"  *United States v. Barczyk*, 434 F. App'x 488, 490 (6th Cir. 2011) (quoting 26 U.S.C. § 6321).  A lien under § 6321 arises at the time the assessment is made and continues until the liability for the amount assessed is satisfied or becomes unenforceable with the passage of time.  26 U.S.C. § 6322.  Plaintiff can enforce any such lien under 26 U.S.C. § 7403.  *Id.*  "Th[e] lien is perfected against the taxpayer even without the recording of a Notice of Federal Tax Lien ["NTFL"]."  *Choate v. Tubbs*, No. 01-1288-T-An, 2004 WL 2109985, at *2 (W.D. Tenn. Aug. 9, 2004) (collecting cases).  That said, a lien under § 6321 is not enforceable against a bona fide subsequent purchaser, holder of a security, mechanic's lienor, or judgment lien creditor without filing a NTFL in accordance with 26 U.S.C. § 6323(f).  *See* 26 U.S.C. § 6323(a).

Congress designed this scheme "to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting."  *United States v. Rogers*, 461 U.S. 677, 683 (1983).  Though the foreclosure and forced sale of encumbered property is a potent remedy, such a remedy reflects Congress's intent "to reach every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 720 (1985) (citation omitted).

32

Real property subject to a lien under § 6321 remains subject to that lien regardless of any subsequent conveyance.  After all, "the transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*."  *Sumpter v. United States*, 314 F. Supp. 2d 684, 687 (E.D. Mich. 2004) (quoting, ultimately, *United States v. Bess*, 357 U.S. 51, 57 (1957)) (citation modified).  Moreover, if a delinquent taxpayer fraudulently conveys real property before a § 6321 lien arises to obstruct the federal government's collection efforts, Plaintiff can set aside that transfer under either the FDCPA or the fraudulent conveyance statute of the state where the subject property sits.  *See* 28 U.S.C. § 3003(b)(1) ("This chapter shall not be construed to curtail or limit the right of the Unites States under any other Federal law or any State law[.]"); *United States v. Arthur*, No. 4:10CV01561 AGF, 2011 WL 4369425, at *3 (E.D. Mo. Sept. 19, 2011) (citing *Upton*, 967 F. Supp. at 58); *United States v. Maryans*, No. S92-401M, 1994 WL 681146, at *3 (N.D. Ind. Apr. 18, 1994).[15]

Here, the IRS made assessments for Kramer's income tax liabilities on March 31, 2014; July 19, 2021; and July 26, 2021.  (ECF No. 1, PageID.11, ¶ 53).

---

[15] *See also Sumpter*, 302 F. Supp. 2d at 723–26 (assessing a fraudulent transfer under state law); *Furnari*, 73 F. Supp. 3d 877 (assessing a fraudulent conveyance under 28 U.S.C. § 3304(b)); *In re Gaither*, 595 B.R. 201, 211 (Bankr. D.S.C. 2018) (observing that the United States is not bound to use the FDCPA to collect its debts but rather can rely on provisions of state or federal law).

Kramer acquired the Subject Property on September 13, 2007.  (*Id.* at PageID.7, ¶ 35).  Consequently, the Subject Property remained subject to the § 6321 liens that arose on March 31, 2014, *before* its transfer to the Trust on December 16, 2020.  And as described above, the Subject Property's conveyance from Kramer to the Trust was fraudulent under both federal and state law.  That fraudulent conveyance should therefore be set aside, and Plaintiff should be able to enforce its § 6321 liens.  *See Maryans*, 1994 WL 681146, at *4 (setting aside a fraudulent transfer of real property under the FDCPA and Indiana law and ordering the enforcement and forced sale of the delinquent taxpayers encumbered property); *United States v. Tri-Ack Prop. Mgmt., Inc.*, 2025 U.S. Dist. LEXIS 149312 (M.D. Fla. Aug. 4, 2025) (granting a motion for default judgment to reduce tax assessments to judgment and to enforce the related § 6321 lien on encumbered property).

**Count V**.  Count V also has merit regarding the enforcement of the judgment liens related to Kramer's (and Richard's) FBAR penalties.  "Upon the filing of a certified copy of the abstract of judgment in the manner in which a Notice of Federal Tax Lien is filed under 26 U.S.C. [§] 6323(f)(1), (2), a judgment lien arises in favor of the judgment creditor on all real property of the judgment debtor." *United States v. Cam*, No. 1:22-cv-20885-KMM, 2022 U.S. Dist. LEXIS 202770, at *12 (S.D. Fla. Oct. 31, 2022) (citing 28 U.S.C. § 3201(a)).  To establish a judgment lien on the real property of a judgment debtor, the judgment creditor

must file "a certified copy of the abstract of judgment in the state or county office where the property is situated as designated by state law." *Mock v. United States*, No. 23-CV-10525, 2025 WL 2156815, at *3 (E.D. Mich. July 29, 2025).  Under Michigan law, this means that the abstract of judgment must be recorded in "the land title records of the register of deeds for the country where the property is located."  Mich. Comp. Laws § 600.2803.  "Once established, a judgement lien is effective for a period of twenty years and takes priority 'over any other lien or encumbrance which is perfected later in time.'"  *Mock*, 2025 WL 2156815, at *3 (citing 28 U.S.C. § 3201(b)–(c)).

Plaintiff properly filed both abstracts of judgment with the register of deeds for Oakland County, the county where the Subject Property is located.  (ECF No. 1, PageID.3–4, 17, ¶¶ 8–10, 72–73; ECF No. 33-3, PageID.445–46).  Thus, there is a valid judgment lien in the Subject Property.  *See Mock*, 2025 WL 2156815, at *3.

### b.    *Prejudice to Plaintiff*

Plaintiff filed this suit in March 2024, and Kramer, despite several opportunities and detailed instructions in the Court's orders, has failed to file proper pleadings.  Moreover, unless the state of affairs have changed, Kramer has not made payments on his tax liabilities or FBAR penalties.  Since the case remains at the pleadings phase, Kramer has shown he will not comply with this Court's orders.  Without a default judgment, Plaintiff cannot collect on the debts

35

owed to it as Kramer's creditor.  Under these circumstances, the prejudice factor weighs in favor of Plaintiff and a default judgment.

### c.      Sufficiency of Complaint

So does this factor weigh in Plaintiff's favor.  To reiterate, the well-pleaded allegations in the complaint are deemed admitted and accepted as true because of Kramer's default.  The complaint sets forth a cogent narrative that explains the basis for the FBAR penalties as well as Kramer's own tax liabilities and penalties. The pleadings also explain the fraudulent scheme by which Kramer attempted to shield the Subject Property from his creditors, namely Plaintiff.  The complaint also establishes Plaintiff's efforts to perfect and enforce its liens on the Subject Property so that it can ultimately obtain the relief it seeks once the fraudulent transfer of the Subject Property is set aside.  *See C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 628.

### d.      Amount of Money at Stake

The amount of money at stake is not insubstantial.  Plaintiff's complaint only seeks monetary damages under Count I for Kramer's individual tax liabilities and penalties; as of March 28, 2025, that total was $507,548.26.  (ECF No. 26, PageID.298).[16]

---

[16] The judgments related to the FBAR penalties also amount to more than $1 million.

"'Matters involving large sums of money should not be determined by default judgment if it can be reasonably avoided.'"  *Parallax Advanced Rsch. Corp. v. SPG Inst., Inc.*, No. 3:21-CV-133, 2021 WL 3634739, at *3 (S.D. Ohio Aug. 17, 2021) (quoting *Rooks v. Am. Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959)) (citation modified).  But as courts in this Circuit have recognized, "the significant value of the outstanding balance" is not "so decisive as to justify denying" a motion for default judgment depending on the circumstances.  *Id.* (citing *PNC Bank, Nat'l Ass'n v. Mid. Michigan Feed Ingredients, L.L.C.*, No 1:21-cv-10655, 2021 WL 2110744, at *7 (E.D. Mich. May 25, 2021)); *PNC Equip. Fin., LLC v. Keller*, No. 1:12-CV-594-HJW, 2014 WL 11515877, at *5 (S.D. Ohio May 29, 2014), *aff'd*, 602 F. App'x 333 (6th Cir. 2015) (denying motion to set aside default judgment of $1,650,379.82 because (1) the defendant failed to establish excusable neglect for not defending the suit; and (2) the matter was a straightforward breach of contract claim).

"Additionally, courts are also more likely to grant a default judgment in cases where a defendant has been entirely unresponsive." *See Parallax Advanced Rsch. Corp.*, 2021 WL 3634739, at *3 (collecting cases); *Orms v. Bailey*, Civ. Action No. 5:05-257-JMH, 2006 WL 3845028, at *3 (E.D. Ky. Dec. 22, 2006) (denying motion to set aside default judgment of $10,430,029.49 because absent defendant failed to show default was the product of excusable neglect); *but see*

*Wong v. Partygaming Ltd.*, No. 1:06-CV-02376, 2008 WL 4449436, at *4 (N.D. Ohio Sept. 30, 2008), *aff'd*, 589 F.3d 821 (6th Cir. 2009) (granting motion to set aside entry of default judgment of $600 million after defendant presented a meritorious defense).

Though a large sum of money is at issue, the undersigned finds that this factor still favors Plaintiff. Twice the Court has told Kramer what he needs to do for this case to proceed to a resolution on its merits. (ECF Nos. 15, 24). Though Kramer has submitted many filings, he has not adhered to the Court's instructions or otherwise identified a meritorious defense, *see supra* Subsection III.B.3. In the undersigned's view this is a case in which a default judgment in a matter involving a large sum of money cannot be "reasonably avoided" based on Kramer's recalcitrance.

### e. *Possible Disputed Facts*

Without proper pleadings, Kramer has failed to raise a basis to dispute the factual allegations in the complaint—allegations which are admitted by way of the entry of default against Kramer. *See C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 629.

In his response to Plaintiff's supplemental brief, Kramer—for the first time—raised disputes regarding the calculation of the FBAR penalties and his own

38

tax liabilities.  (ECF No. 35, PageID.489–91).[17]  The undersigned views this as a last-ditch effort to avoid the inevitable.  Kramer had opportunities to dispute the FBAR penalties—he just failed to do so.  *See Kramer*, Case No. 2:19-cv-10818-BAF-APP, ECF No. 3 (E.D. Mich. June 4, 2019) (reflecting personal service on Kramer); *id.*, ECF No. 10 (E.D. Mich. Feb. 27, 2020) (setting a hearing on a motion for default judgment at which Kramer failed to appear); *United States v. Doron et al.*, Case No. 1:18-cv-24492-RNS, Dkt. No. 13, (S.D. Fla. Feb. 12, 2019) (reflecting personal service on Kramer); *id.*, Dkt. Nos. 20, 21, 22 (regarding filings submitted by Kramer).  In each instance, the court granted motions for default judgment against Kramer, and Kramer did not seek post-judgment relief or appeal the judgment.  Likewise, Kramer was the petitioner before the United States Tax Court in the proceedings regarding his individual tax liabilities and penalties.  But rather than dispute the issues there, Kramer submitted "hundreds of pages of tax-protester rhetoric," (ECF No. 1-1, PageID.31), which resulted in an entry of default and a ruling in favor of the Government.  (ECF No. 1-1).

Kramer is well-acquainted with the effects of an entry of default.  So it is surprising and disingenuous that Kramer now alludes to possible factual disputes at the last minute after the Court instructed him how to file proper pleadings—and, in

---

[17] Kramer also denied the fraudulent nature of his transfer of the Subject Property to the Trust.  But as described above, Kramer's contentions lack substance.  *See supra* Subsection III.B.4.a.

essence, how to avoid an entry of default—and only after the Court requested supplemental briefing.  Kramer has had several opportunities across several forums to properly litigate these disputes and has shown no indication he will properly do so here.  At bottom, this factor at most favors Plaintiff or, at the very least, is neutral.

### f.  *Excusable Neglect*

Kramer's default does not result from excusable neglect.  He received personal service of process and clear instructions on how to construct proper pleadings in response to Plaintiff's claims.  Kramer has failed to comply with those instructions despite the Court affording him the opportunity to do so.  The Court also identified the issues Kramer must address to file an appropriate Answer to the complaint.  (ECF No. 25) (explaining that Kramer must move to set aside the entry of default, move to extend the deadline for answering the complaint, and adhere to the Court's prior instructions).  Kramer's failure to follow the Court's instructions evinces a willful decision to ignore the Court's instructions on how to litigate the claims levied against him.  *C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 629.  This factor falls in favor of Plaintiff.

### g.  *Decision on the Merits*

As mentioned, the three prior cases against Kramer resulted in a default judgment.  The undersigned does not see this case ending any differently.

"Although there is a general preference for decisions on the merits, it does not override the necessity of enforcing procedural rules and ensuring that plaintiff can obtain relief when defendants fail to participate." *C.A.T. Glob. Inc.*, 737 F. Supp. 3d at 629; *see also Cunningham v. Acct. Processing Grp. LLC*, No. 2:21-CV-0120, 2022 WL 900618, at *4 (S.D. Ohio Mar. 28, 2022) ("Where trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of the litigants actually before them.").

While Kramer has submitted numerous filings to the Court, none of them adhere to the Court's prior Orders on what he must do for this case to proceed beyond the pleadings phase of this litigation. None of Kramer's filings reflect an intent to meaningfully participate in litigation designed to reach a merits-based conclusion. The preference for a decision on the merits should yield in favor of a default judgment under the circumstances here.

####    5.    Rule 55(b)(2) Hearing

Under Federal Rule of Civil Procedure 55(b)(2), the Court has discretion to determine whether a hearing is necessary to determine damages. *See Intelligent Perimeter Sys., Inc.*, 2022 WL 3348653, at *4. To that end, "courts have determined that a hearing is not necessary when statutory damages are sought or when a plaintiff has provided sufficient documentary proof to establish the judgment amount." 10A Wright and Miller's Federal Practice and Procedure §

41

2688 (4th ed. Sept. 2025 Update); *see also Barnes v. Abraham, Inc.*, No. 2:17-CV-279, 2017 WL 5714091, at \*2 (S.D. Ohio Nov. 28, 2017) ("A court may determine damages without holding an evidentiary hearing if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.") (internal quotation marks omitted).

Plaintiff has only requested damages with respect to Count I (reducing Kramer's individual tax liabilities and penalties to judgment).  For such a claim, "the facts establishing tax liability also establish damages" thereby rendering a hearing unnecessary.  *Intelligent Perimeter Sys., Inc.*, 2022 WL 33486553, at \*4.  Here, "[t]he only potential gap is the accruing additions and interest[,] but these amounts are calculable and discernable."  *Id.*  In the sworn declaration included with Plaintiff's motion for default judgment, IRS Advisor Gina Bacon included updated balances as of March 28, 2025, using the IRS Information Data Retrieval System ("IDRS").  (ECF No. 26-2).  These calculations are supported by the "INTST Reports" retrieved from the IDRS.  (*Id.* at PageID.318–23).  The reported calculations should therefore be accepted, and the Court should award Plaintiff a monetary judgment on Count I for the full requested amount.[18]  *See id.*

---

[18] A hearing is also not required for Counts II–V.  *See Mendez*, 2022 WL 1238655, at \*3–4 (resolving fraudulent transfer claims under federal and state law without a hearing on a motion for default judgment); *United States v. Shore*, No. 1:11-cv-01038-AWI, 2012 WL 670725 (E.D. Cal. Feb. 29, 2012) (granting motion for default judgment in case involving claims to enforce federal tax and judgment liens without a hearing), *report and recommendation*, 2012 WL 1673572 (E.D. Cal. Apr. 3, 2012).

## IV.   CONCLUSION

For the above-stated reasons, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Default Judgment as to Doron Kramer* (ECF No. 26) be **GRANTED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  January 5, 2026.                    s/Curtis Ivy, Jr.
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on the January 5, 2026, by electronic means and/or ordinary mail.

                                           s/Sara Krause
                                           Case Manager
                                           (810) 341-7850

44